*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* YOUNG, Minors.

UNPUBLISHED
November 21, 2023

No. 364711
Ingham Circuit Court
Family Division
LC Nos. 20-000862-NA;
      21-000252-NA;
      22-000126-NA

*In re* YOUNG, Minors.

No. 364712
Ingham Circuit Court
Family Division
LC Nos. 20-000862-NA;
      22-000126-NA

Before: GLEICHER, C.J., and SWARTZLE and YATES, JJ.

PER CURIAM.

These appeals involve challenges to the termination of parental rights. Respondent-mother and respondent-father are the parents of two minor children, ZY and ZDY. Their parental rights to both of those children, as well as respondent-mother's parental rights to a third child, DY, were terminated on November 14, 2022. Respondent-mother appeals of right the order terminating her parental rights under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions leading to adjudication), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care or custody), and (j) (likelihood of harm if children returned to parent). Respondent-father likewise appeals of right the same order terminating his parental rights on the same statutory grounds. On appeal, respondent-mother argues that the trial court improperly suspended her parenting time, that the Department of Health and Human Services (DHHS) did not make a referral for adequate psychological services, and that the trial court inappropriately relied on substance use as a basis for terminating her parental rights. Respondent-father contends that the DHHS did not make reasonable efforts at reunification and that the trial court erred by finding that it was in the best interests of ZY and ZDY to terminate his parental rights. We affirm.

## I. FACTUAL BACKGROUND

Respondent-mother has given birth to seven children. Her parental rights to the oldest four children were previously terminated and they are not at issue on this appeal. The cases concerning her three youngest children came before the trial court after the birth of her sixth child, ZY. When ZY was born in November 2020, Children's Protective Services (CPS) promptly removed ZY from respondent-mother's care due to her history of terminations and the child being born with THC in his system. At that time, respondent-mother's fifth child, DY, had already been removed from her care in Cook County, Illinois, and placed in an unrelated foster home. Per Illinois family services, respondent-mother was supposed to live with DY and respondent's mother, but respondent-mother instead returned to Michigan to live with respondent-father. After respondent-mother did not visit DY in person for approximately six months, tested positive for cannabinoids, and had late prenatal care for ZY, the trial court took jurisdiction of DY in place of the Illinois authorities. While all of that was taking place, respondent-mother gave birth to her seventh child, ZDY, in February 2022. ZDY was removed immediately after his birth because he tested positive for THC and respondent-mother had continuing interaction with CPS for a host of issues.

CPS identified the barriers to respondent-mother's reunification as her ongoing issues with substance abuse, emotional and mental stability, and lack of parenting skills. Respondent-mother's psychological evaluation resulted in a recommendation that refraining from marijuana use would improve her ability to function as a parent. Respondent-mother saw no harm in using marijuana, though, so she continued to use marijuana throughout the case. Initially, respondent-mother was communicative, but in April 2022, she stopped participating in services. Her therapy yielded some progress for respondent-mother, but she did not fully benefit because she continued to have contact with respondent-father despite the trial court's order directing her not to see respondent-father.

Respondent-father fled to Alabama, but he returned to turn himself in to the Ingham County Jail on arrest warrants that resulted from aggravated domestic violence charges against respondent-mother. While in jail, respondent-father took part in parenting classes, a "CATS" substance-abuse program,[1] and anger-management classes. Ultimately, he was removed from the "CATS" program for failing to attend the classes that took place during the day when he needed to sleep for his night shift job. Instead, respondent-father started working with a "HOPES" program to help him secure employment and housing upon his scheduled release from jail on December 7, 2022.[2]

Prior to respondent-father's release from jail, the trial court held a two-day bench trial and review hearing. On November 14, 2022, the trial court issued a 13-page order concluding that the statutory grounds for termination set forth in MCL 712A.19b(3)(c)($i$), (c)($ii$), (g), and (j) had been established. With regard to respondent-mother, the trial court referred to "a long history with child removal, termination, and CPS substantiation" as well as persistent issues with "housing, substance abuse, domestic violence, mental health, employment, parenting skills, and lack of prenatal care during pregnancy." Further, the trial court noted that respondent-mother "began threatening harm to case workers and others in relation to the case in May of 2022." With respect to respondent-

---

[1] The acronym "CATS" appears to refer to a community addiction treatment services program.

[2] The acronym "HOPES" refers to hospitality opportunities for people (re)entering society.

father, the court relied on his "assaultive history, incarceration, and lack of care for his children[.]" The trial court found that termination of parental rights was in the best interests of each of the three children to promote stability and the likelihood of adoption. Both respondents then appealed.

## II. LEGAL ANALYSIS

Respondent-mother contends that the trial court improperly suspended her parenting time, that the DHHS erred in failing to make a referral for adequate psychological services, and that the trial court, in terminating her parental rights, improperly relied on her substance use. Respondent-father insists that the DHHS did not make reasonable efforts at reunification and that the trial court decided incorrectly that it was in the best interests of ZY and ZDY to terminate his parental rights. We shall address each of these arguments in turn.

## A. SUSPENSION OF RESPONDENT-MOTHER'S PARENTING TIME

Respondent-mother contends that the trial court erred by suspending her parenting time on the basis of her use of marijuana because no harm to the children was imminent from such use, but drug-test results were used as a basis merely for switching to supervised visitations. Michigan law permits the trial court to suspend parenting time once a petition seeking to terminate parental rights has been filed, see MCR 3.977(D) and MCL 712A.19b(4), but no law or court rule addresses the trial court's authority to suspend parenting time between adjudication and the filing of a petition seeking termination of parental rights. *In re Laster*, 303 Mich App 485, 488-489; 845 NW2d 540 (2013). Instead, this Court has ruled that, during the period following adjudication but before the filing of the petition seeking termination, the amount of parenting time allowed and the conditions for exercising parenting time are within the trial court's discretion and should be determined based upon the child's best interests. *Id*. at 490. A finding of harm is not required to suspend parenting time during this period, but such a finding ordinarily is "implicit in the court's decision" to suspend a parent's parenting time. *Id*.

According to MCL 712A.13a(13), which applies both before and after adjudication, see *In re Ott*, ___ Mich App ___; ___ NW2d ___ (2022), "regular and frequent parenting time" shall be provided to a parent "unless the court determines either that exigent circumstances require less frequent parenting time or that parenting time, even if supervised, may be harmful to the juvenile's life, physical health, or mental well-being." Here, the trial court suspended all parenting time after respondent-mother made threats to the agency. A caseworker explained the threats as follows:

> I requested that [respondent-mother] confirm with me her parenting times the night before, just to ensure she would be there because her visit was at 9:00 in the morning. She had texted me back, stating, "Of course I'm gonna be there. Please stop ruining my day. My sister seen you walk out of your house, and my niece went to school with your daughter." Again, I didn't really think much of it until a few moments later. I received a phone call from my supervisor, in which she sent me a screenshot that [respondent-mother] posted on social media, stating, "Grab your guns and protest at DHS or wherever you visit. If they don't budge, light that B up."

That threat constituted "exigent circumstances" warranting the suspension of parenting time under MCL 712A.13a(13).

Respondent-mother seems to hint that the trial court inappropriately suspended parenting time with DY because of respondent-mother's use of marijuana, but that argument does not clearly appear in her brief. Respondent-mother cannot leave it to this Court to unravel her arguments for her. *In re TK*, 306 Mich App 698, 712; 859 NW2d 208 (2014). Respondent-mother's citation to the record about the marijuana issue is extremely vague. In any event, parenting time with DY was suspended because a termination petition was filed with respect to DY. Our Legislature has decreed in MCL 712A.19b(4) that "[i]f a petition to terminate parental rights to a child is filed, the court may suspend parenting time for a parent who is a subject of the petition." Consequently, the trial court did not err in suspending respondent-mother's parenting time.

## B. REASONABLE EFFORTS TO REUNIFY THE CHILDREN AND FAMILY

Respondent-mother faults the DHHS for failing to offer her more intensive psychological or psychiatric care. We review a trial court's decision concerning reasonable efforts for clear error. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). But because this argument was not preserved in the trial court, we review the issue under the plain-error doctrine. *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008). To obtain relief, respondent-mother must establish that: (1) an error occurred; (2) the error was "plain," i.e., clear or obvious; and (3) the plain error affected substantial rights. *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019).

"In general, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App at 542. As a part of these reasonable efforts, the DHHS "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2007). "While the [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

Respondent-mother's therapist worked with her from September 1, 2021, until June or July 2022. The therapist explained that the therapy ended because of a lack of trust. He had encouraged respondent-mother to pursue a higher level of treatment, such as inpatient or intensive-outpatient care, after she made threats. The therapist indicated that the referral for a greater level of care was made not only because of the threats, but also because respondent-mother had seemed to regress in her progress. On two occasions in May 2022 and in June or July 2022, the therapist had had to call the police for a welfare check to make sure that respondent-mother was stable and she was not going to hurt anyone. Although the therapist offered to refer respondent-mother for "more intense" treatment, the caseworker had not been able to discuss that offer with respondent-mother because of a lack of communication with her. Under these circumstances, no plain error is apparent.

Respondent-father likewise claims that the DHHS did not expend reasonable efforts toward reunification for him and his children. We can review that unpreserved issue only for plain error. Respondent-father insists that the DHHS should have offered couples counseling to respondent-

mother and him, but in the next sentence he argues that a no-contact order should have been put in place to keep the two of them apart. Moreover, respondent-father indicated that he was in jail for violating a condition of his probation by having contact with respondent-mother. In other words, a no-contact order had been imposed in his criminal cases and he violated that order. As a result, we cannot fathom how a no-contact order imposed by the DHHS at an earlier juncture would have made any difference in the case.

Respondent-father also contends that the DHHS did not expend reasonable efforts because it did not determine how he had benefited from services while in jail. Given respondent-father's incarceration, however, the DHHS could not assess how respondent-father would conduct himself in the outside world around his children and others. Additionally, respondent-father was offered many services, but he chose to flee and remain out of contact with the DHHS for many months in order to avoid incarceration. Under these circumstances, no plain error is apparent.

## C. STATUTORY GROUNDS

Respondent-mother next asserts that the trial court improperly relied on her substance use in terminating her parental rights. We review the trial court's decision regarding statutory grounds for clear error. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "[T]o terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *Id*.

Respondent-mother does not focus on any specific statutory ground for termination, instead contending more generally that termination was improper because the court should not have relied on her substance-use issues. As an initial matter, a positive result for cocaine obtained through an unreliable test was not used for purposes of termination. Additionally, the court, in its termination decision, focused primarily on respondent-mother's mental instability and her issues with domestic violence. Also, the gist of respondent-mother's argument is that no evidence established that her use of medical marijuana affected her parenting ability. But that theory ignores the risk to which she exposed her unborn children. The caseworker stated that she never received information from a doctor verifying that it was acceptable for respondent-mother to use marijuana while pregnant. And respondent-mother even acknowledged to the caseworker that it was important to stop using marijuana while pregnant. Respondent-mother claimed that she needed to use marijuana while pregnant in order to keep her food down, but she admitted at the termination hearing that her doctor told her that it was not safe to use marijuana while pregnant. The court did not err by mentioning substance abuse in its termination decision given that respondent-mother displayed poor judgment in using marijuana while pregnant and did so throughout several pregnancies. Thus, the trial court did not commit clear error in finding that statutory grounds supported termination of respondent-mother's parental rights.

## D. BEST INTERESTS

Finally, respondent-father argues that the trial court erred by finding that it was in the best interests of ZY and ZDY to terminate his parental rights. We review for clear error the trial court's finding that termination of parental rights is in a child's best interests. *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014). After a trial court finds statutory ground for termination of parental rights, the trial court must decide by a preponderance of the evidence whether termination

is in the child's best interests. *Id*. A trial court should weigh several factors, such as " 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' " *Id*. "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case-service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714.

The trial court did not clearly err in its best-interests determination. Respondent-father had an extensive history of domestic violence. He did not name alternative caregivers for his children during his incarceration. He fled to avoid incarceration, and he was out of contact with the DHHS and his attorney for months. He had no bond with ZDY and a minimal bond with ZY. Further, ZDY and ZY were both in a pre-adoptive placement. Respondent-father was still incarcerated at the time of the termination hearing and would need a significant amount of time after his release to establish himself in the community and demonstrate proper parenting skills. The trial court did not clearly err by concluding that the two young children needed stability and should not have to languish in foster care for months or years in the hope that respondent-father would fully engage in services and eventually become a proper parent.

In sum, the trial court did not err by excusing the DHHS from providing efforts toward reunification, nor did the court abuse its discretion by suspending respondent-mother's parenting time. Similarly, the trial court did not clearly err by finding that statutory grounds for termination of respondents' parental rights existed or that termination was in each child's best interests.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Brock A. Swartzle
/s/ Christopher P. Yates